COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Bumgardner and Agee
Argued at Salem, Virginia


CASSANDRA ANNE GULLION

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2385-00-3      JUDGE RUDOLPH BUMGARDNER, III
                                         OCTOBER 23, 2001
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
                     Charles M. Stone, Judge

          Joseph R. Winston, Special Appellate Counsel
          (Public Defender Commission, on brief), for
          appellant.

          Robert H. Anderson, III, Senior Assistant
          Attorney General (Mark L. Earley, Attorney
          General, on brief), for appellee.


     The trial court convicted Cassandra Anne Gullion of eight

counts of forgery and five counts of uttering.  She contends the

trial court abused its discretion in crediting the victim's

testimony because the victim's testimony "was delusional and

ought not to have been believed as a matter of law.  It was an

abuse of discretion to credit such testimony."  Finding no

error, we affirm.

     The defendant stipulated that she signed and uttered the

checks in question, but claimed the owner of the account gave

her permission to do so.  The owner, Michael B. Cockram,

_____

          * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

testified he did not give permission.  Cockram suffered from schizophrenia, post-traumatic stress disorder and depression, and he smoked marijuana.  He was hospitalized for his mental illness and taking medication when the defendant wrote the checks.  At trial, he was still taking medication for his illness.

The defendant maintains the mental illness and medication made Cockram delusional at trial.  She contends his testimony shows he was obviously delusional thereby making his testimony inherently incredible as a matter of law.  She maintains the trial court abused its discretion in believing the testimony.

Mental illness does not automatically render a witness incompetent.  Coleman v. Commonwealth, 66 Va. (25 Gratt.) 865, 875 (1874), overruled on other grounds, 246 Va. 174, 431 S.E.2d 648 (1993); Tate v. Chumbley, 190 Va. 480, 495, 57 S.E.2d 151, 158 (1950) (testamentary capacity).  The trial court, in the exercise of its discretion, determines the competency of a witness on a case-by-case basis.  "[T]he test is whether . . . the witness can [accurately] observe, recollect, and communicate the facts in question."  Charles E. Friend, The Law of Evidence in Virginia § 6.3, 214 (4th ed. 1993) (citing Helge v. Carr, 212 Va. 485, 487, 184 S.E.2d 794, 796 (1971)).  A witness must understand the questions posed, be able to formulate intelligent responses, and understand the importance of speaking the truth.  Helge, 212 Va. at 488, 184 S.E.2d at 796.  "If at the time of

-

the examination he has this share of understanding, he is competent."  Coleman, 66 Va. (25 Gratt.) at 875.  Once the trial court determines a witness is competent, the trier of fact must assess the credibility of the witness' testimony.  "The trier of fact is the sole judge of the credibility of the witnesses, unless, as a matter of law, the testimony is inherently incredible."  Walker v. Commonwealth, 258 Va. 54, 70-71, 515 S.E.2d 565, 575 (1999) (citations omitted), cert. denied, 528 U.S. 1125 (2000).

In this case, the trial court found Cockram's testimony about not giving consent to be credible and of sufficient weight to convict.  The trial court denied the defendant's motion to strike and stated that while Cockram's testimony "was rambling at times . . . he was very specific on the issue of whether or not he granted consent to the Defendant to write these checks . . . ."  (Emphasis added.)

The record supports a finding that Cockram was both competent and credible.  Cockram comprehended the questions posed and responded with reasonable intelligence.  Cockram testified clearly and consistently that he did not give the defendant permission to write checks on his account.  He denied authorizing anyone to use his checks.  Nothing suggests he failed to comprehend, remember, and communicate his knowledge of the events about which he testified.  Indeed, other evidence supports his testimony about related matters.  While still in

-

the hospital, Cockram put a hold on his checking account as soon as he learned about the unauthorized checks.  Upon discharge, he closed the checking account and transferred the balance to a new savings account.

The record does not reflect that the testimony was inherently incredible or so contrary to human experience or to human behavior as to be unworthy of belief as a matter of law. Barker v. Commonwealth, 198 Va. 500, 503, 95 S.E.2d 135, 137 (1956).  Reasonable men could believe the victim's testimony. The trial court did not err in refusing to strike the evidence, and accordingly, we affirm the convictions.

Affirmed.